**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **PAIGE LOUIS BENNER,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:07-CV-326-Y** |
| | § | |
| **NATHANIEL QUARTERMAN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B. PARTIES

Petitioner Paige Louis Benner, TDCJ-ID #1278531, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Iowa Park, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

### C. FACTUAL AND PROCEDURAL HISTORY

In February 2004, Benner, a repeat felony offender, was charged by indictment with burglary of a habitation with the intent to commit a felony in the Criminal District Court Number Three of

Tarrant County, Texas.  (1State Habeas R. at 48-49)[1]  At trial, the evidence showed that Amy Benner, Benner's estranged wife, had a protective order against him.  (Reporter's R., vol. 2, at 143-94)  In the early morning hours of September 13, 2003, Benner walked to Amy's house, dug under the house with a small pointed hand shovel and lay in wait for her.  At some point, he entered the house through a trapdoor in a closet floor.  At about 10:30 p.m., Amy returned home from having dinner with friends and found Benner in her kitchen holding a fire extinguisher and the shovel.  She ran screaming from the house, but tripped and fell on a horseshoe stake.  Benner chased and caught her and took her back into the house where he told her to put duct tape over her mouth and to bind her wrists.  She put duct tape over her mouth and then elbowed Benner in the ribs and tried to run from him, but he overpowered her, grabbed a long knife, and held it to her throat.  He told her to bind her wrists again, and she complied because she was afraid and thought he was going to kill her.  He told her he was going to keep her in the house until Monday morning, at which point he wanted her to call her mother and tell her to pay him $30,000.  He told her he had been diagnosed with cirrhosis and needed the money to live out his remaining two years.  He led her to a spare bedroom and lowered the knife and stuck it in her stomach.  In the bedroom, the duct tape on her mouth fell off, but he bound her ankles with tape.  He told her to go to her bedroom, and she was forced to hop to the room, falling once and hitting her head.  There, she retrieved the knife she kept under a pillow, but Benner took it from her, cutting her hands and fingers.  He asked about his amplifier, and she told him she had sold it but would give him $100 for it.  He said, "you just saved your right ear."  He asked about his stereo, and she told him she had it in storage. He said, "you just saved your left

[1] "1State Habeas R." refers to the state court record of Benner's state habeas application no. WR-65,469-01; "2State Habeas R." refers to the state court record of his state habeas applicaiton no. WR-65,469-02; and, "3State Habeas R." refers to the state court record of his state habeas application no. WR-65,469-03.

ear." He asked about his record collection, and she told him she had it in storage also. He said, "you just saved your eyeballs." He poked and tormented her with the knives while questioning her. She was terrified and had to go to the bathroom and asked Benner to cut the duct tape from her ankles. He cut the tape and followed her into the bathroom. At which point, she decided she needed to talk to Benner to calm him down. He told her he wanted to go see his daughter in Colorado. Amy promised not to call the police, agreed to give him $100 for the amplifier, and told him to take anything else he wanted. She then agreed to drive him back to a friend's house where he was staying. After she returned home and talked to several friends, she called the police. She required multiple stitches across her hand and in her arm, stomach and leg. The police obtained physical and forensic evidence linking Benner to the offense. (Reporter's R., vol. 3, at 83) Benner did not testify. At the punishment phase, Amy testified to Benner's history of harassment and violence against her. (4Reporter's R. at 15-43)

Based on the evidence, the jury found Benner guilty of the lesser included offense of aggravated assault with a deadly weapon and assessed his punishment at fifty years' confinement. (Clerk's R. at 157) Benner appealed his conviction, but the Tenth District Court of Appeals of Texas affirmed the trial court's judgment and the Texas Court of Criminal Appeals dismissed his petition for discretionary review as untimely. *See Benner v. Texas*, No. 10-05-00057-CR, slip op. (Tex. App.–Waco Apr. 12, 2006); *Benner v. Texas*, PDR No. 849-06.

Benner has filed three state applications for writ of habeas corpus challenging his conviction and/or sentence. The first was dismissed by the Texas Court of Criminal Appeals because Benner's direct appeal was still pending. (1State Habeas R. at cover) The second was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court, and the third was dismissed under the Texas abuse-of-the-writ doctrine . (2State Habeas R. & 3State Habeas R. at

cover) *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (Vernon 2005). Benner filed this federal

petition for writ of habeas corpus on May 25, 2007. *See Spotville v. Cain*, 149 F.3d 374, 377 (5th

Cir. 1998) (holding pro se habeas petition filed when papers delivered to prison authorities for

mailing).

### D. ISSUES

Benner grounds are multifarious and are construed to raise the following claims[2]:

(1) The trial court erred by:
  (a) admitting evidence of an extraneous offense for which he was acquitted;
  (b) admitting evidence of "barred" past convictions;
  (c) admitting evidence of a tape-recorded telephone conversation between himself and Amy Benner; and
  (d) failing to rule on his pro se motions.

(2) He received ineffective assistance of trial counsel because counsel:
  (a) failed to investigate and research his case;
  (b) failed to make reasonable decisions in testing his case;
  (c) failed to call witnesses;
  (d) failed to adequately cross-examine Amy Benner;
  (e) failed to object to the state's introduction of a tape-recorded telephone conversation between himself and Amy Benner;
  (f) failed to object to admission of evidence of a prior extraneous offense for which he was acquitted; and
  (g) failed to file motions.

(3) He received ineffective assistance of appellate counsel because counsel:
  (a) failed to file a timely petition for discretionary review;
  (b) failed to investigate the facts and law relevant to his case;
  (c) failed to raise one or more of the claims he raises herein on appeal;
  (d) failed to offer an alternative to his guilt; and
  (e) failed to communicate with him.

(4) The trial court and the state violated the rule under *Brady v. Maryland* by withholding evidence favorable to the defense;

(5) The trial and appellate courts violated his right to due process and federal standards of review under the double jeopardy and/or collateral estoppel doctrines; and

---

[2]The court notes that Quarterman's interpretation and enumeration of the claims presented may differ.

(6)     He is actually innocent of the offense.  (Petition at 7; Amended Petition at 7-8.)

### E.  Rule 5 Statement

Quarterman believes that one or more of Benner's claims are unexhausted as required by 28 U.S.C. § 2254(b)(1)(A) and procedurally defaulted.  (Resp't Answer at 4-8; Resp't Supp. Answer at 2-5)

### F.  Exhaustion

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief.  28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999).  The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).  In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals.  *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985).  Thus, a Texas prisoner may satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal Procedure in a procedurally proper manner.  *See* Tex.  Code Crim. Proc. Ann. art. 11.07; *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Quarterman asserts that one or more of Benner's claims have not been properly exhausted in state court because the Texas Court of Criminal Appeals has not had the opportunity to rule on the merits of the claims.  Benner did not file a timely petition for discretionary review raising his claims; thus it was necessary that he raise his claims in a properly filed state habeas application under article 11.07 of the Texas Code of criminal Procedure.  His first state habeas application was

dismissed by the Texas Court of Criminal Appeals because his direct appeal was still pending. The dismissal by the Texas Court of Criminal Appeals was procedural, as opposed to substantive, and signifies that the state court did not consider the merits of Benner's claims raised in that application. *See Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002). Furthermore, article 11.07 of the Texas Code of Criminal Procedure prohibits a successive habeas petition if the petitioner urges grounds therein that could have been, but were not, raised in an earlier habeas application. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4; *Ex parte Barber*, 879 S.W.2d 889, 891 n.1 (Tex. Crim. App. 1994). Thus, to the extent Benner raises claims for the first time in his third state habeas application, which was dismissed as abusive, the claims are unexhausted. *Ex parte Benner*, No. 58,294-02. The Texas Court of Criminal Appeals applies the abuse of the writ doctrine regularly and strictly, and the doctrine is an adequate and independent state procedural bar for purposes of federal habeas review. *Henderson v. Cockrell*, 333 F.3d 592, 605 (5th Cir. 2002). Accordingly, it is necessary that Benner raised the claims presented herein in his second state habeas application to satisfy the exhaustion requirement.

Having reviewed the state record of his second state habeas application, it appears Benner failed to raise and/or sufficiently develop the following claims: 1(b) and (d), 2(d) and (g), 3, 4, 5, in part, and 6. Absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated by Benner, the claims are procedurally barred from this court's review. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Finley v. Johnson*, 243 F.3d 215, 219-20 (5th Cir. 2001).

## G. DISCUSSION

### 1. *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant

to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). Factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson*, 178 F.3d 381,

384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

2.      *Trial Court Error*

Benner claims the trial court erred by allowing evidence during the punishment phase of a previous assault on Amy Benner in 2002, for which he was acquitted, in violation of double jeopardy (or the collateral estoppel component of the Double Jeopardy Clause) and due process. (claims 1(a) and 5).[3] The introduction of evidence of extraneous offenses of which a defendant has been acquitted, however, does not violate either double jeopardy or due process. *See Dowling v. United States,* 493 U.S. 342, 348-49 (1990); *Harris v. Cockrell*, 313 F.3d 238, 246 (5th Cir. 2002); *Vega v. Johnson*, 149 F.3d 354, 359 (5th Cir. 1998).

Benner claims the trial court erred by allowing evidence of a tape-recorded telephone converstation between himself and Amy Benner in violation of federal rules of evidence 901(b)(5) and (6). Benner cites to no authority that federal rules of evidence extend to state criminal trials, and none is found.

3.      *Ineffective Assistance of Trial Counsel*

Benner claims his trial counsel was ineffective by failing to investigate and research his case; failing to make reasonable decisions in testing his case; failing to call witnesses; failing to object to the state's introduction of a tape-recorded telephone conversation between himself and Amy Benner; and, failing to object to admission of evidence of a prior extraneous offense for which he was acquitted.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI. To establish ineffective assistance of counsel a petitioner must show (1)

---

[3]Under claim 5, Benner also asserts the appellate court's handling of the claim was improper, however this claim is unexhausted and procedurally barred from this court's review, *see supra*.

that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In evaluating an ineffective assistance claim, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Strategic choices made by counsel after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Id.* at 690.

After a hearing by affidavit on Benner's ineffective assistance claims, the state habeas court entered findings of fact refuting Benner's allegations and concluded that Benner had failed to prove deficient performance of counsel. (2State Habeas R. at 47-53) In turn, the Texas Court of Criminal Appeals denied relief without written order on the findings of the state habeas court. Other than a brief passing comment, Benner makes no specific reference to the state court findings and makes no effort to rebut the presumptive correctness of the findings. (Pet'r 8/17/07 Reply at 4-5) *See* 28 U.S.C. § 2254(d)(1); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002). Nor does an independent review of the state court records reveal clear and convincing evidence that would rebut the presumption of correctness. Thus, applying the appropriate deference to the state habeas court's factual findings, the state courts' adjudication of Benner's ineffective assistance claims is not contrary to or involve an unreasonable application of the *Strickland* standard in light of the record as a whole. Even if Benner could establish deficient performance, he has not shown he was prejudiced as a result of one or more of counsel's acts or

omissions. Assuming the jury believed the prosecution witnesses' testimony, most particularly the testimony of Amy Benner, and reconciled any inconsistencies therein, this evidence, in conjunction with the photographic exhibits, was overwhelming evidence of Benner's guilt. *See Leal v. Dretke*, 428 F.3d 543, 552 (5th Cir. 2005); TEX. PENAL CODE ANN. § 22.02(a) (Vernon Supp. 2006). Furthermore, Benner cannot establish that his sentence would have been less harsh, given the nature of the offense and Benner's past history of violence against Amy Benner, but for counsel's alleged deficiencies.

## II. RECOMMENDATION

Based on the foregoing, Benner's petition for writ of habeas corpus should be DENIED.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document. The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until August 7, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(B)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th

Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV. ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until August 7, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 17, 2008.

_____/s/ Charles Bleil_____
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE